
FILED
 2011 Feb-16  PM 03:10
 U.S. DISTRICT COURT
    N.D. OF ALABAMA

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
NORTHEASTERN DIVISION

| | |
|---|---|
| KENDYL GRACE ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | |
| ) | CIVIL ACTION NO. |
| ADTRAN, INC., ) | 5:09-cv-01954-IPJ |
| ) | |
| Defendant. ) | |

## **MEMORANDUM OPINION**

Pending before the court is defendant Adtran Inc.'s motion for summary judgment (doc. 14), brief in support (doc. 18), and evidentiary submissions in support of said motion (doc. 15-17).  Plaintiff Kendyl Grace filed a response brief (doc. 21) and evidentiary materials (doc. 22), to which the defendant filed a reply (doc. 27).

### Procedural Background

Plaintiff Kendyl Grace brings this action against her former employer, defendant Adtran Inc., for pregnancy discrimination under Title VII of the Civil Rights Act of 1964, as amended by the Pregnancy Discrimination Act of 1978. Plaintiff brings additional claims under the Family and Medical Leave Act

1

("FMLA") for retaliation and interference with rights guaranteed by the Act. This court has jurisdiction pursuant to 28 U.S.C. § 1331, 1343(a)(4) and 28 U.S.C. § 2201 and 2202.

**Factual Background**

Defendant designs and manufactures telecommunications equipment in Huntsville, Alabama, where it employs approximately 1600 employees. Grace Dep., at 419-420; Humphrey Aff., ¶ 2; Humphrey Dep., at 75, 77; Edmundson Dep., at 10.[1] Defendant prohibits any form of discrimination as laid out in its Equal Employment Opportunity Policy. Grace Dep., at 102-103, Defendant's Ex. 1-2; Humphrey Aff., ¶ 6, Att. A. Defendant also maintains an FMLA policy that allows employees to take up to twelve weeks of unpaid leave. Grace Dep., at 102-103, 294, Defendant's Ex. 1, 2, 31 at 18; Humphrey Aff., ¶ 5, Att. A; Edmundson Aff., ¶ 4, 6, Att. A. Defendant further allows employees general leave, but if the employee does not return to work following the general leave, his/her employment will terminate. Edmundson Aff., ¶ 9, Humphrey Aff., ¶ 8. Upon her hire, plaintiff

---

[1] At relevant times, Frank Humphrey ("Humphrey") was Adtran's Manager of Human Resources, Rosemary Edmundson ("Edmundson") was the Benefits Administrator, Steve Berry ("Berry") was Plaintiff's supervisor during her first pregnancy, and Lonna Tittle ("Tittle") was Plaintiff's supervisor beginning in July 2008. Grace Dep., at 14, 79, 193, 302-303; Edmundson Aff., ¶ 2; Humphrey Aff., ¶ 2; Tittle Aff., ¶ 10.

acknowledged that she had "carefully reviewed and fully underst[ood]" ADTRAN's Equal Employment Policy and its FMLA policy. Defendant's Ex. 6.

Plaintiff began working for defendant on June 6, 2005, as a temporary employee. Grace Dep., at 104, 135, Defendant's Ex. 3. On January 27, 2006, Plaintiff submitted an application for employment at Adtran. Grace Dep., at 109, Defendant's Ex. 4. Plaintiff certified that the information she submitted in her application was true and complete and acknowledged that "falsified statements on this application ... shall be grounds for dismissal." Grace Dep., at 109, Defendant's Ex. 4. Plaintiff represented she had been employed by West Telemarketing and that her reason for leaving was "scheduling conflicts," but West records reflect that she was "...involuntarily terminated...for violation of the West policy on suspected conflict of interest, fraud, and embezzlement. Specifically, for falsified of [sic] Tuition Reimbursement." Grace Dep., at 109, 100-133, 128-129, Defendant's Ex. 4, 5. Plaintiff conceded that she received money for tuition reimbursement, but contends that she was going to school at the time. Grace Dep., at 110-111, 117, 131-133, Defendant's Ex. 5. None of the schools identified by Plaintiff and her husband have any records of her attendance for one year before and one year after Plaintiff's employment with West was terminated. Grace Dep., at 103-104, 109, Defendant's Ex. 3, 4; T. Grace Dep., at

21;[2] Alabama A&M Documents; Calhoun Community College Documents; University of Alabama in Huntsville Documents; Virginia College Documents. Although plaintiff signed a document stating that she was being involuntarily terminated, she alleges that she had already called West to quit her employment before she signed the May 28, 2005 notice.  Grace Dep., at 110-111, 120-121, Defendant's Ex. 5.  Defendant contends that had it discovered that plaintiff misrepresented the reason for her separation from West while plaintiff was still employed at Adtran, defendant would have terminated plaintiff's employment. Grace Dep., at 109, Defendant's Ex. 4; Humphrey Aff., ¶ 11; Humphrey Dep., at 275, 294.

On April 17, 2006, plaintiff became a full-time employee in defendant's Distribution Center – a warehouse where employees pull raw materials, productions kits, and sales order; receive raw materials; fill customer requisitions for raw materials; manage inventory; and must have the ability to lift up to 35 pounds in all jobs.  Humphrey Aff., ¶ 12, Att. D; Grace Dep., at 136, 359, 363-363, Defendant's Ex. 41-43; Bennett Aff., ¶ 4-5; Carter Aff., ¶3, 8; Rake Aff., ¶ 8;[3]

---

[2] Terrell Grace is the husband of Kendyl Grace.  T. Grace Dep., at 6.

[3] Tim Bennett was plaintiff's supervisor when she was a temporary employee.  Bennett Aff., ¶ 11.  Don Carter was a former manager of the Distribution Center in 2007.  Carter Aff., ¶ 3.  Scott Rake has been a Distribution Center Manager since April or May 2008, though he has not directly supervised plaintiff.  Rake Aff., ¶ 2, 15.

Humphrey Dep., at 137, 165; Carter Dep., at 24.  Plaintiff was initially hired as a Material Handler, became a Kitting Clerk in October 2006, and also worked as an Inventory Control Clerk.  Grace Dep., at 192; Humphrey Aff., ¶ 14, Att. F.  All of these positions required the ability to lift 35 pounds.  Grace Dep., at 219, 283, Defendant's Ex. 9, 20; Carter Aff., ¶ 11, Att. B.

**Plaintiff's First Pregnancy**

On June 15, 2006, plaintiff submitted FMLA paperwork for leave due to her first pregnancy, which was approved.  Grace Dep., at 233, Defendant's Ex. 10; Edmundson Aff., ¶ 10, Att. C.  During plaintiff's first pregnancy, she developed an umbilical hernia, a swelling of the abdominal area that can be painful and exacerbated by lifting.  Grace Dep., at 47-48; Strickland Dep., at 14.[4]  To repair an umbilical hernia, surgery would be required, which leads to six to eight weeks of recovery time.  Strickland Dep., at 36.  Plaintiff testified that she was told the surgery could not be done during or in the immediate aftermath of a pregnancy because she would still be engorged.  Grace Dep., at 34-35.  However, Dr. Strickland testified that at least a month postpartum there is nothing she could think of to prevent plaintiff from having the surgery.  Strickland Dep., at 37-38.

---

[4] Dr. Isabella Strickland currently practices family medicine and was plaintiff's regular doctor.  Strickland Dep., at 12.

During her first pregnancy, plaintiff's OB/GYN physician, Dr. Conrad, limited her lifting to 15 pounds while under his care for her pregnancy.  Defendant's Ex. 11.  Plaintiff's supervisor at the time, Steve Berry, allowed plaintiff to put labels on reels.  However, Mr. Berry acted without the approval of Human Resources.  When Frank Humphrey learned of this, he allowed plaintiff to continue with the accommodated job position until the end of her pregnancy in order to avoid upsetting plaintiff since Mr. Berry had already told her it was alright.  Humphrey Aff., ¶ 16-20; Humphrey Dep., at 145.  Mr. Berry was later put under strict performance standards, in part due to his handling of plaintiff's situation during her first pregnancy, and Mr. Berry eventually resigned.  Humphrey Dep., at 140-141.

    Plaintiff gave birth on January 13, 2007, and went on FMLA leave following the birth.  Grace Dep., at 179-180, Defendant's Ex. 17.  Plaintiff sent in additional FMLA requests for leave due to spinal headaches.  Grace Dep., at 195-197, 233, Defendant's Ex. 21.  On March 14, 2007, Dr. Conrad wrote a note indicating plaintiff needed two more weeks of leave for back pain, and Dr. Conrad placed plaintiff under a 15 pound lifting restriction until March 26, 2007.  Grace Dep., at 181-182, Defendant's Ex. 17.  Defendant required that all employees update their doctors' letters on restrictions.  Grace Dep., at 184.  On May 18, 2007,

plaintiff visited her general physician, Dr. Isabella Strickland, who wrote her a letter stating that plaintiff "has been diagnosed with umbilical hernia which prevents her from lifting objects greater than 15 pounds. She should therefore be restricted from lifting no more than 15 pounds while at work," and plaintiff turned this note in to defendant. Grace Dep., at 202-203, 208, Defendant's Ex. 22; Strickland Dep., at 21, Defendant's Ex. 3.

Plaintiff testified that she performed many light duty jobs after May 18, 2007, until the end of her tenure, but she was not able to attribute this to any accommodation made by defendant. Grace Dep., at 216-218. Neither Tittle nor Humphrey testified to knowing that plaintiff was under any restriction and thus did not know of her being accommodated for any restriction. Tittle Dep., at 76-78; Humphrey Dep., at 153-159. Plaintiff testified that many other employees were being accommodated for lifting restrictions. However, of the employees plaintiff mentioned, several were under no lifting restrictions. Of the others, the lifting restrictions were neither as restrictive as plaintiff's 15 pound lifting restriction after her first pregnancy (and therefore not as restrictive as the 10 pound restriction at issue in this case) nor for an indefinite time period – none of the other employees had restrictions lasting longer than six weeks. Humphrey Aff., ¶ 34-36.

**Plaintiff's Second Pregnancy**

On September 24, 2008, plaintiff submitted another request for FMLA leave in order to obtain leave relating to her second pregnancy – the one that is the subject of this litigation. Grace Dep., at 229-230, Defendant's Ex. 23. Dr. Conrad was again the doctor that completed the Health Care Provider section of the FMLA paperwork, in which he indicated that plaintiff could now not lift over 10 pounds. *Id*. Plaintiff met with Rosemary Edmundson regarding her FMLA leave on September 24, 2008. Grace Dep., at 231-232, Defendant's Ex. 24; Edmundson Dep., at 37-38. Edmundson informed plaintiff's current supervisor, Lonna Tittle, by email of plaintiff's FMLA request as well as the 10 pound lifting restriction, but did not mention plaintiff's pregnancy. Grace Dep., at 87-88; Edmundson Aff., ¶ 14, Att. H-I; Tittle Dep., at 62, Plaintiff's Ex. 1. In response to Edumdson's email, Tittle indicated she had no positions available for someone with those restrictions and was worried that plaintiff would pick up something weighing more than 10 pounds. Thus, Tittle informed plaintiff not to do any lifting for the time being. Grace Dep., at 87-88; Edmundson Aff., ¶ 15; Tittle Dec., ¶ 16; Edmundson Dep., at 40-41, Plaintiff's Ex. 4; Tittle Dep., at 64, 74.

Plaintiff testified that Tittle was jealous of her for being pregnant, and that

was one of the reasons that her lifting restriction became a problem. Plaintiff testified Tittle was jealous because she could not have children herself, having told employees, including plaintiff, that she was unable to have kids and was thus going through an adoption process. Plaintiff contends that since Tittle told her not to lift anything once she found out about her pregnancy, that also proves her jealousy. Grace Dep., at 76-89. Tittle testified that she never knew of the 15 pound lifting restriction that plaintiff claims to have worked under since the end of her first pregnancy up until her second pregnancy, and Tittle testified that plaintiff appeared to be working without restriction in her duties. Tittle Dep., at 76-77. Frank Humphrey did not have any knowledge either that plaintiff was working under any sort of restriction after her first pregnancy. Humphrey Dep., at 154-159.

When Frank Humphrey returned to the Huntsville offices from traveling in early October 2008, he was informed of the situation and looked at plaintiff's skill set and all open positions before deciding there was nothing available that plaintiff could perform. Humphrey Dep., at 161-162, 171; Humphrey Aff., ¶ 24; Grace Dep., at 257-258. On October 2, 2008, Humphrey held a meeting with plaintiff and Tittle. Humphrey informed plaintiff that there were no jobs available that could accommodate plaintiff due to her pregnancy and the indefinite 10 pound lifting restriction. Grace Dep., at 98, 253-254, Defendant's Ex. 27; Humphrey

9

Aff., ¶ 25; Tittle Aff., ¶ 24; Humphrey Dep., at 174, Plaintiff's Ex. 1.  Plaintiff asked if she could do reel counting, but there was no longer a position solely for reel counting, in addition to the fact that it required lifting of 35 pounds. Humphrey Dep., at 164-165; Tittle Dep., at 96.  Plaintiff also told Humphrey and Tittle that Lynn (Cagle) Church[5] offered to do plaintiff's lifting in exchange for plaintiff doing all Church's paperwork.  Church testified that she said she would do this, but only while plaintiff was pregnant.  Grace Dep., at 91; Church Dep., at 42-43.  Tittle and Humphrey told plaintiff that they could not have one employee do another employee's lifting because they were short-staffed and it would be unfair.  Tittle Dep., at 90-91; Humphrey Aff., ¶ 26; Tittle Dec., ¶ 22.  Plaintiff testifed that she was then told to go fill-out paperwork because she was going to be off until the end of her pregnancy.  Grace Dep., at 276.  Humphrey testified taht he tole plaintiff to go discuss her options with Rosemary Edmundson.  Grace Dep., at 276; Humphrey Dep., at 186-187, Plaintiff's Ex. 1.  Plaintiff's request for FMLA leave was approved, and on October 3, 2008, Humphrey sent an email to Edmundson stating that plaintiff would be "off work until after the birth of her baby and we receive a return to work notice."  Grace Dep., at 242-244, Defendant's Ex. 26; Edmundson Aff., ¶ 18, Att. K; Humphrey Aff., ¶ 30, Att. O;

---

[5] Church was plaintiff's coworker who worked in inventory control.  Church Dep., at 13.

10

Humphrey Dep., at 193-194, Plaintiff's Ex. 2.  On November 4, 2008, Dr. Conrad wrote an additional note indicating plaintiff's 10 pound lifting restriction was still in place.  Grace Dep., at 281, Defendant's Ex. 28.  Plaintiff concedes that she was unsure of her status following the October 2, 2008, meeting, and she admits to receiving her Adtran benefits after the meeting.  Grace Dep., at 38-39, 285-286, 42, 100-101, 272, 278-280, 313-315, Defendant's Ex. 29, 35.

Plaintiff gave birth to her second child on January 7, 2009.  Grace Dep., at 33-34.  On January 13, 2009, defendant sent plaintiff a letter stating that plaintiff was being placed on general leave since her twelve weeks of FMLA leave had expired.  Grace Dep., at 303-304, Defendant's Ex. 33; Edmundson Aff., ¶ 21, Att. M.  On February 5, 2009, Dr. Strickland issued a note stating that plaintiff could not lift greater than 10 pounds due to the umbilical hernia.  Grace Dep., at 307, Defendant's Ex. 34.  Though plaintiff can not remember the date of the conversation, plaintiff contacted defendant via Rosemary Edmundson to ascertain her status and whether she could return to work.  Edmundson asked whether the lifting restriction had been lifted.  Plaintiff responded that it had not been lifted, thus, Edmundson indicated plaintiff could not return to work until the restriction was lifted.  Grace Dep., at 307-310.  Plaintiff provided no information to defendant to indicate her restriction would be lifted prior to April 8, 2009.  Grace

Dep., at 322; Humphrey Aff., ¶ 31, 33.  On April 8, 2009, defendant sent a letter to plaintiff informing her that her general leave would expire on April 11, 2009, and that plaintiff's employment would be terminated effective April 13, 2009, if she did not return to work.  Grace Dep., at 344, Defendant's Ex. 39; Humphrey Aff., ¶ 33, Att. R; Humphrey Dep., at 292-293.

### Summary Judgment

A moving party is entitled to summary judgment if there is no genuine issue of material fact, leaving final judgment to be decided as a matter of law.  *See* Fed. R. Civ. P. 56; *Matshushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 578, 106 S.Ct. 1348, 1355-56 (1986).  The facts, and any reasonable inference therefrom, are to be viewed in the light most favorable to the non-moving party, with any doubt resolved in the non-movant's favor.  *See Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 90 S.Ct. 1598, 1609 (1970).

A party opposing a properly submitted motion for summary judgment may not rest upon mere allegations or denials of his pleadings, but must set forth specific facts showing that there is a genuine issue for trial.  *Eberhardt v. Waters*, 901 F.2d 1578, 1580 (11th Cir. 1990).  The non-moving party's evidence on rebuttal must be significantly probative and not based on mere assertion or merely

be colorable. *See* Fed. R. Civ. P. 56(e); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249050, 106 S.Ct. 2505, 2511 (1986). Speculation does not create a genuine issue of fact. *Cordoba v. Dillard's, Inc.*, 419 F.3d 1169, 1181 (11th Cir. 2005).

## Legal Analysis

I.  *Pregnancy Discrimination Claim*.

Discrimination can be shown through either direct or circumstantial evidence. If plaintiff can not present direct evidence of discrimination, plaintiff must present circumstantial evidence from which an inference of intentional discrimination can be drawn. In order to prevail on a disparate treatment claim based on circumstantial evidence, plaintiff is required to first establish a prima facie case of sex discrimination. Plaintiff must prove that "(1) she is a member of a group protected by Title VII; (2) she was qualified for the position or benefit sought; (3) she suffered an adverse effect on her employment; and (4) she suffered from a differential application of work or disciplinary rules." *Spivey v. Beverly Enterprises, Inc.*, 196 F.3d 1309, 1312 (11th Cir. 1999)(setting out elements in pregnancy discrimination case). If plaintiff can establish a prima facie case of discrimination, defendant has the opportunity to show a legitimate, non-discriminatory reason for its actions. Plaintiff then must show that this reason is

just pretext for the unlawful discrimination.  "A reason is no pretext for discrimination 'unless it is shown *both* that the reason was false, *and* that discrimination was the real reason.'" *Brooks v. County Com'n of Jefferson County, Ala.*, 446 F.3d 1160 (11th Cir. 2006).

Plaintiff contends that there is direct evidence of discrimination – that in the October 2008 meeting she was told defendant had no job for her because of her pregnancy.  However, the record shows that plaintiff was told there were no jobs available to her because of her pregnancy and the fact that she had a 10 pound lifting restriction.  Therefore, there is no direct evidence of pregnancy discrimination, and plaintiff must establish a prima facie case.

Plaintiff cites to *Schoenfeld v. Babbit* to argue that the prima facie model can be bypassed – "prima facie case of disparate treatment can be established by any 'proof of actions taken by the employer from which we can infer discriminatory animus because experience has provided that in the absence of any other explanation it is more likely than not that those actions were bottomed on impermissible considerations." 168 F.3d 1257, 1268 (11th Cir. 1999).  Plaintiff contends that the temporal proximity establishes discriminatory animus.  *See Asmo v. Keane, Inc.*, 471 F.3d 588, 593 (6th Cir. 2006)(concluding that a two-month time span between the employer learning of an employee's pregnancy and an

adverse action demonstrated a nexus for the purpose of establishing a prima facie case). Plaintiff claims that one week after she told defendant of her pregnancy the adverse action took place when Humphrey and Tittle told plaintiff that they did not have a job for her. However, plaintiff was not fired in October 2008, but rather six months later in April of 2009 after she failed to return to work. *See Thomas v. Cooper Lighting, Inc.*, 506 F.3d 1361, 1364 (11th Cir. 2007)("A three to four month disparity between the statutorily protected expression and the adverse employment action is not enough. *See id*. (citing *Richmond v. ONEOK*, 120 F.3d 205, 209 (10th Cir. 1997)(3 month period insufficient) and *Hughes v. Derwinski*, 967 F.2d 1168, 1174-75 (7th Cir. 1992)(4 month period insufficient")). Further, plaintiff was only placed on leave, during which she continued to receive short-term disability benefits. In further support of defendant not having any discriminatory animus is the fact that, during plaintiff's first pregnancy, defendant not only kept plaintiff in its employ, but also continued to accommodate plaintiff after Mr. Berry allowed plaintiff to do reel counting. Plaintiff is therefore required to establish a prima facie case.

  There is no dispute as to the first requirement of a prima facie case that plaintiff is a member of a protected class. The third requirement of an adverse employment action is met by the eventual termination of plaintiff. Elements two

and four are therefore the only elements in dispute.

The second requirement is that plaintiff be qualified for the position. Defendant contends that plaintiff was not qualified for the position because a requirement of her job is to be able to lift more than 35 pounds, which she was unable to do because of her indefinite, 10 pound lifting restriction. Plaintiff relies on *Young v. General Food Corp.*, 840 F.2d 825, 829-30 n.3 (11th Cir. 1988), *cert. denied*, 488 U.S. 1004 (1989)("'where a plaintiff has held a position for a significant period of time, qualification for that position sufficient to satisfy the test of a prima facie case can be inferred.' *Id.* Whether the employee was adequately performing his job would become an issue only if the employer articulated unsatisfactory performance as its reason for discharge"). Plaintiff contends that she had been working under the restriction, as evidenced by a May 18, 2007, restriction letter, and had been receiving satisfactory performance evaluations. Humphrey Dep., Plaintiff Ex. 1. In reply, defendant argues plaintiff cannot state she was working under restriction since 2007, when she admits she was doing all normal job duties and cannot show any accommodations made to her for light duty.

The fourth requirement is not met because plaintiff was not subjected to a differential application of work or disciplinary rules. Though plaintiff claims that

other employees were granted accommodations for lifting restrictions, none of those employees were similarly situated. Some employees were allowed to work under lifting restrictions; however, none of the restrictions were as limiting as plaintiff's 10 pound restriction. More importantly, all of those employees were accommodated because their restrictions were only for a temporary duration. In this case, plaintiff's restriction is of an indefinite duration. If plaintiff never has the surgery required to repair her umbilical hernia, which she has given no indication of doing, the lifting restriction could continue forever. For this reason, plaintiff has failed to establish a differential application of work rules, and therefore, has failed to establish a prima facie case of discrimination. Thus, summary judgment is due to be granted.

II.   *FMLA Retaliation.*

In order to establish a claim for retaliation under the FMLA, plaintiff must prove the following elements of her *prima facie* case: (1) she availed herself of a protected right under the FMLA; (2) she suffered an adverse employment decision; and (3) there exists a causal connection between the protected activity and the adverse employment decision. *Wascura v. City of Miami*, 257 F.3d 1238, 1248 (11th Cir. 2001). If plaintiff establishes her prima facie case, defendant may

then show it had a legitimate, non-discriminatory reason for its actions, which plaintiff can later rebut by showing it was only pretext for discrimination.

The first two requirements are not in dispute. The issue arises over whether there exists a causal connection between plaintiff requesting FMLA leave and her termination. Plaintiff contends that it was at the October meeting when she was terminated, and therefore, a close temporal proximity of only a couple weeks shows a causal connection. However, the record shows that plaintiff was not terminated until six months later, in April 2009, and only after failing to return to work. Further, not only was plaintiff awarded twelve weeks of FMLA, during which she received short-term disability benefits, but defendant also gave plaintiff twelve weeks of general leave. *See Johnson v. Morehouse College, Inc.*, 199 F.Supp.2d 1345, 1362 (N.D. Ga. 2002)("Plaintiff's statutorily protected conduct was her use of twelve weeks of leave following the birth of her child. Clearly, as plaintiff's FMLA leave expired on March 7 and she was not fired for over two months, there is no causal connection between her 'protected conduct' and her termination"). Thus, plaintiff can not meet the burden with respect to her claim, and therefore, summary judgment is due to be granted.

III.   *FMLA Interference*.

Plaintiff contends that defendant interfered with her FMLA rights under an involuntary leave theory, where an employee is forced to exhaust FMLA leave before it is needed. A claim for involuntary leave arises when an employer forces an employee to take FMLA leave when the employee does not have a serious health condition that precludes him from working. However, that claim is only ripe once the employee seeks FMLA at a later date and is unable to do so because of prior forced FMLA leave. *Wysong v. Dow Chemical Co.*, 503 F.3d 441, 449 (6th Cir. 2007).

Plaintiff's claims fail for a couple of reasons. First, even if plaintiff can show that her umbilical hernia is not a "serious medical condition that prevented her from working," which is debatable due to her 10 pound lifting restriction, she never requested FMLA leave at a later date. Second, "[i]f the employee is unable to perform an essential function of the position because of a physical or mental condition, including the continuation of a serious health condition or an injury or illness also covered by workers' compensation, the employee has no right to restoration to another position under the FMLA." 29 C.F.R. § 825.216(c)(2009); *see Hick's v. Leroy's Jewelers, Inc.*, 225 F.3d 659, 2000 WL 1033029 at *5 (6th Cir. 2000); *see also Clark v. Macon County Greyhound Park, Inc.*, 727 F.Supp.2d 1282, 1292 (M.D. Ala 2010)("An employee has no right to reinstatement under the

19

FMLA if the employee is unable to perform an essential function of her position"). Here, even after plaintiff's general leave, which was the equivalent twelve weeks plaintiff would have gotten if she had taken her FMLA leave right after childbirth, plaintiff was still unable to perform essential functions of the job. Plaintiff was under an indefinite, 10 pound lifting restriction, and plaintiff had given no indication that she had any intent to have the surgery to get the hernia fixed. Thus, plaintiff is unable to establish a prima facie case for interference under the FMLA, and summary judgment is due to be granted.

## Conclusion

Having considered the foregoing, the court is of the opinion that defendant's motion for summary judgment (doc. 14) is to be **GRANTED** as there are no genuine issues of material fact as to both the pregnancy discrimination and FMLA claims, and the court shall so rule by separate order.

**DONE** and **ORDERED** this the 16th of February 2011.

_____
INGE PRYTZ JOHNSON
U.S. DISTRICT JUDGE